IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MANUEL PASILLAS,            )
                            )
        Plaintiff,          )
                            )
   v.                       )   No. 10 C 7614
                            )
OKUMA AMERICAN CORPORATION  )
a/k/a OKUMA MACHINE TOOLS.  )
INC., a foreign             )
corporation,                )
                            )
        Defendant.          )

MEMORANDUM OPINION AND ORDER

On September 6, 2011, plaintiff filed an amended complaint against defendant Okuma asserting claims for negligence and strict product liability arising out of an incident in which plaintiff was injured while working on a machine manufactured by defendant. Now before me is defendant's motion for summary judgment, which I deny for the reasons that follow.

I.

The following is the basic story that emerges from the facts that are either undisputed or construed in the light most favorable to plaintiff. Plaintiff is an experienced service engineer who was sent by his employer, Morris Midwest, to repair a malfunctioning machine manufactured by defendant. Upon disassembling the machine, plaintiff determined that the problem

involved the machine's "spindle," and that to repair it, he would have to disassemble the "spindle assembly."[1] This entailed removing a part called the "drawbar."

Plaintiff understood that defendant manufactures drawbars using one of two alternative designs: the "helical spring" design and the "Bellville washer" design. In the first design, the drawbar is under pressure, and a pressure relieving "compression" tool is required to remove the drawbar safely. In the second design, the drawbar is not under the same pressure and does not require a pressure relief tool for safe disassembly.

In the course of disassembling the machine, plaintiff could feel pressure on the drawbar, and he confirmed, using a specialized tool, that the part was indeed under pressure. Plaintiff did not have a compression tool, so he called defendant's technical support. Plaintiff spoke to Dave Vega, an employee of defendant, who told plaintiff that there should not be pressure on the drawbar because the machine plaintiff was repairing had the Bellville washer design. Plaintiff and Vega both testified that Vega consulted the design drawings for the machine, and also consulted his "advisor," Toru Sakurai. Vega and Sakurai concluded that, based on the designs, the drawbar should be relaxed and not under pressure.

---

[1] There is no need, at this stage, to discuss these parts or how they work in any detail.

Plaintiff told Dave Vega that he did not want to proceed without the compression tool and asked both his employer and defendant for the tool, but he was told he could not get it. Plaintiff told Vega that he did not think it was safe to proceed, but "trusted [Vega's] expertise," explaining at his deposition that Vega, whom plaintiff consulted frequently in the course of his work, "ha[d] been there for like 20 years." Vega told plaintiff that he should be "cautious" if he felt pressure, but did not tell plaintiff not to proceed.

Plaintiff thus proceeded to adjust one of several bolts that held the drawbar in place, whereupon the drawbar "shot out." Plaintiff was injured after the shooting drawbar caused him to fall back and hit his neck on the machine.

II.

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). I must construe all facts in the

light most favorable to the plaintiff and draw all justifiable inferences in his favor. *Id.* at 255.

Defendant argues that it is entitled to summary judgment on both of these claims because whatever misinformation defendant gave plaintiff about the machine's design (and there is no dispute that defendant did give him misinformation), plaintiff understood the risks of proceeding without a compression tool and assumed that risk. Defendant acknowledges that assumption of risk is generally a question for the jury but argues that on this record, it is entitled to judgment on the theory of "secondary implied assumption of risk," which Illinois law defines as "assumption of the risk...where the defendant's negligence created a danger that was apparent to the injured party, who nevertheless voluntarily chose to encounter it." *Country Mut. Ins. Co. v. Sunbeam Products, Inc.*, 500 F. Supp. 2d 986, 990 (N.D. Ill. 2007) (quoting *Evans v. Lima Lima Flight Team, Inc.*, 373 869 N.E.2d 195, 206 (2007)).

The very excerpt of plaintiff's testimony on which defendant relies, however, reveals that when plaintiff expressed doubts about the safety of proceeding, telling Dave Vega, "this thing has pressure," Vega (whose experience, plaintiff testified, was greater than plaintiff's own) told him, "no, it shouldn't have." Plaintiff further testified: "And I told Dave Vega, it feels like a spring is stuck on the drawbar and holding it, because from

experience. And he said that should not be the problem. The machine has beveled washers. That should not be the problem. So he said go ahead. Just be careful." Pasillas Dep., Def. L.R. 56.1 Stmt., Exh. B at 79:15-22. On this evidence, plaintiff is entitled to have a jury decide whether it was apparent to him that it was dangerous to remove the drawbar without a compression tool, and that he proceeded to do so in spite of the risk.

Defendant emphasizes, as if it settled the matter, that plaintiff answered "yes" to the question, "And in this instance you knew you were really taking a risk?" But in *Moran v. Raymond Corp.*, 484 F.2d 1008 (7th Cir. 1973), the very case on which defendant focuses, the court held that the determination of assumption of risk "is not to be made solely on the basis of the user's own statements but rather upon the jury's assessment of all of the facts established by the evidence." *Id*. at 1015. Here, the plaintiff's admission that he was generally aware of some unspecified risk does not entitle defendant to judgment on the basis that plaintiff unreasonably assumed the specific risk that releasing the drawbar would cause him to fall backwards and hit his neck on the machine. *See Sunbeam Products*, 500 F. Supp. 2d at 991 (declining to conclude as a matter of law that plaintiff who knew her toaster had a "sticking" problem

voluntarily assumed the risk that the toaster would catch fire and damage her house).[2]

Finally, "[a] plaintiff's acceptance of the risk is not to be regarded as voluntary where the plaintiff is compelled to accept the risk in order to exercise or protect a right or privilege of which the defendant has no right to deprive him." *Varilek v. Mitchell Engineering Co.*, 558 N.E. 2d 365, 375 (Ill. App. Ct. 1990). In *Varilek*, the Illinois Appellate Court reversed the lower court's finding that the plaintiff—an ironworker who slipped and fell to the ground while installing a roof that was dangerously slick with oil—assumed the risk of a fall, since "[h]is only alternative was not to do his job," which the defendant had no right to deprive him of the right and privilege to do. Similarly here, plaintiff's job required him to dismantle the machine, and a jury could reasonably conclude on this record that plaintiff had no alternative but to proceed without a compression tool.

---

[2] Similarly, plaintiff's testimony that Vega told him, "[i]f that thing does shoot out, you know, it's going to go right through you. And just stay away, try to keep as many fingers away from the area," does not establish, in the context of the record as a whole, that plaintiff voluntarily encountered a known risk. Plaintiff testified that he "took [] precautions" to avoid these particular dangers, and, indeed, is undisputed that plaintiff was not hit by the drawbar. Defendant offers no evidence that it warned plaintiff about, or that plaintiff otherwise had any knowledge of, the possibility that dismantling the drawbar without a compression tool would cause him to fall back and hit his neck.

Defendant also argues that summary judgment is proper because there is no evidence to support plaintiff's claim that the machine "was defective or contained inadequate warnings." But evidence of "a failure of the manufacturer to warn of the danger or to instruct on the proper use of the product" is one of the ways plaintiff can establish that the machine he was working on was unreasonably dangerous. *Mikolajczyk v. Ford Motor Co.*, 901 N.E. 2d 329, 335 (Ill. 2008). A jury could conclude that the machine was unreasonably dangerous because it had a design different from the one defendant represented it as having. This is particularly true because the machine's actual design required plaintiff, in order to complete the repair safely, to take certain steps not required by the represented design. Defendant's misinformation to plaintiff could be construed as providing "inadequate warning" about the machine's dangerous nature and the "proper use of the product."

Finally, defendant argues that plaintiff cannot prove his claims in the absence of expert testimony, and that plaintiff's proposed expert's testimony must be stricken under *Daubert*. I conclude, however, that at least some of plaintiff's theories of liability rest on facts and arguments that are within the ken of the average juror, and do not require expert testimony. Accordingly, defendant's summary judgment motion is denied

regardless of the outcome of its *Daubert* motion, on which I will rule in a separate order.

                                    **ENTER ORDER:**

                                    _____
                                    **Elaine E. Bucklo**
                                  United States District Judge

Dated: May 2, 2013